IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 13-253 |
| TIMOTHY D. BURNS | : | |

### GUILTY PLEA MEMORANDUM

I.  **INTRODUCTION**

The defendant, Timothy D. Burns, is charged in a four-count superseding information with one count each of mail and wire fraud, and two counts of making a false statement to a bank, in violation of Title 18, United States Code, Sections 1341, 1343, and 1014. These charges arise from the defendant's involvement in a scheme to defraud clients, investors, and a bank in connection with certain investments and loans.

II.  **PLEA AGREEMENT**

Pursuant to the written guilty plea agreement, the defendant will plead guilty to all four counts of the superseding information.  A copy of the plea agreement will be forwarded to the Court in advance of the guilty plea hearing.

III.  **ELEMENTS OF THE OFFENSES**

**Count One - 18 U.S.C. § 1341** *(mail fraud)*

1. The defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises, or omissions, concerning a material fact, or willfully participated in such a scheme with knowledge of its fraudulent nature;

1

  2.  The defendant did so with the intent to defraud; and

  3.  That in advancing, furthering, or carrying out the scheme, the defendant used the mails or caused the mails to be used.

**Count Two - 18 U.S.C. § 1343** *(wire fraud)*

  1.  The defendant devised a scheme to defraud or to obtain money or property by materially false or fraudulent pretenses, representations or promises, or omissions, concerning a material fact, or willfully participated in such a scheme with knowledge of its fraudulent nature;

  2.  The defendant did so with the intent to defraud; and

  3.  That in advancing, furthering, or carrying out the scheme, the defendant transmitted any writing, signal, or sound by means of a wire, radio, or television communication in interstate commerce or caused the transmission of any writing, signal, or sound of some kind by means of a wire, radio, or television communication in interstate commerce.

**Counts Three and Four - 18 U.S.C. § 1014** *(false statement to a bank)*

  1.  The defendant knowingly made or caused to be made a false statement or report to a bank;

  2.  The false statement or report was made for the purpose of influencing the bank's action on a loan application or decision concerning whether to continue extending credit; and

  3.  The bank was then insured by the Federal Deposit Insurance Corporation.

IV.     **MAXIMUM SENTENCE (STATUTORY)**

The Court may impose the following statutory maximum sentences: for Count One (mail fraud), 20 years of imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment; Count Two (wire fraud), 20 years of imprisonment, three years of supervised release, a $250,000 fine, and a $100 special assessment; and on each of Counts Three and Four (false statement to a bank), 30 years of imprisonment, five years of supervised release, a $1,000,000 fine, and a $100 special assessment.  In addition, probation is not an available sentence for Counts Three and Four, each of which is a Class A felony.

**TOTAL MAXIMUM SENTENCE:** 100 years of imprisonment, a mandatory term of some imprisonment, five years of supervised release, a $2.5 million fine, and a $400 special assessment.  Full restitution of as much as $19,638,923.60 also shall be ordered.  Forfeiture of all proceeds from the offenses also may be ordered.

The defendant further understands that supervised release may be revoked if its terms and conditions are violated.  When supervised release is revoked, the original term of imprisonment may be increased by up to three years, per count of conviction.  Thus, a violation of supervised release increases the possible period of incarceration and makes it possible that the defendant will have to serve the original sentence, plus a substantial additional period, without credit for time already spent on supervised release.

V.      **EVIDENCE IN SUPPORT OF THE ALLEGATIONS**

If this case were to proceed to trial, the government would introduce competent evidence which would prove that from May 15, 2007, to September 12, 2012, the defendant participated in a scheme to defraud clients, investors, and a bank in connection with certain investments and loans.  At all relevant times Timothy Burns was a businessman whose office

3

was in Conshohocken, Pennsylvania.  Burns owned and operated several businesses, including one, Family Office, that provided bill paying and concierge services to wealthy clients, and another that provided financial management services to a different set of clients.  The defendant was the sole owner of these businesses.

In 2010, it appeared that Facebook, Inc., the owner of the online social network known as "Facebook," would become a publicly traded company.  Some of the defendant's friends and clients learned that a large financial services company planned to purchase and sell shares of Facebook prior to any public offering of the stock.  However, at some time in late 2010, that financial services company withdrew from brokering Facebook stock.  Some of Burns' clients and their associates remained interested in buying Facebook shares before it was available as a publicly traded stock.  The defendant stepped in and offered to make the purchases for them.  It was Burns' intention to earn money from the transactions in several different ways: he would take a fee at the time of the purchase, he would take a small percent of the growth in the value of the shares for a period of two years after the shares were publicly traded, and he planned to make purchases for his own account.

In order to purchase Facebook shares before they were publicly offered, Burns formed a limited partnership known as "Fund I."  Defendant Burns issued a prospectus for Fund I.  It was a limited partnership, and investors were limited partners.  Their interests were a function of the amount of money they invested.  By approximately March 2011, the defendant raised from about 50 investors approximately $13 million to purchase Facebook shares.

Initially, through an intermediary internet site, Burns negotiated to purchase about 500,000 shares at $27 each through a Facebook employee whose initials are D.W.  On March 21, 2011, the defendant called the capital from Fund I investors to close the deal.  However, just

before closing, D.W. changed his mind and walked away from the deal.  It was Burns' understanding that D.W. wanted a higher price for the shares. The deal fell through.

Shortly thereafter, the intermediary told the defendant that he had found two million shares of Facebook that the defendant could buy for $27 per share through an individual known as "Ken Dennis."   Unbeknownst to Burns at the time, this was a pseudonym for an individual whose true name is Troy Stratos, who is charged elsewhere.

Through the intermediary internet site, Burns was introduced to Stratos.  Stratos represented that for an advance of approximately $11.2 million, he would provide Burns with 20 million Facebook shares.  The defendant created a second limited partnership entity for the purpose of buying shares of Facebook and issued a prospectus for it, as he had for the first.  This second partnership was called Fund II.

In order to pay the $11.2 million to Stratos, the defendant used Fund I money from investors, which he did not disclose to the Fund I investors.  The defendant had represented to those investors that their money would be used for direct purchases of Facebook shares, and had not told them it would be used to pay the intermediary he knew as "Dennis."

In advance of any closing for the purchase of Facebook shares, the defendant spent approximately $4 million of Fund II investor money to buy a personal family shore home on Pelican Drive in Avalon, New Jersey.  On October 3, 2011, in order to close on his purchase of the Pelican Drive property, the defendant caused a wire transfer of $4,198,654.03 from PNC Bank in Pennsylvania to the Sturdy Savings Bank in Stone Harbor, New Jersey, which was derived from funds which he told victims would be used to purchase stock.  [Count Two]

Also in advance of any closing for the purchase of Facebook shares, Burns used Fund II money to make a down payment on a commercial property on East Elm Street in

Conshohocken, Pennsylvania, for his personal investment portfolio.  No later than December 2011, the defendant learned that Stratos had misappropriated the $11.2 million, failed to acquire any Facebook shares, and defrauded Burns.  After the defendant learned that, he nonetheless called for additional capital from Fund II investors.

On January 12, 2012, in order to secure a $6 million loan to purchase the Elm Street property, the defendant falsely represented to The Bancorp Bank ("Bankcorp") that his companies had earned approximately $20 million from the sale of Facebook stock, $8.6 million of which was his profit on the transaction, when, in fact, he had made no such purchases and profit, but had been defrauded, as he well knew, of $11.2 million that he had paid to Stratos.  [Count Three]

Beginning in approximately 2008 and continuing through January 2012, the defendant misappropriated approximately $1.5 million from his Family Office clients.  He used the stolen money to pay his businesses' operating expenses, his personal expenses, and to purchase the Elm Street property for himself.

Even after he learned that the $11.2 million of Fund I investor money had been stolen by Stratos, the defendant failed to disclose the theft to the investors and continued to lull them into believing that he had purchased Facebook shares on their behalf.  On or about April 12, 2012, in furtherance of his scheme, the defendant caused to be mailed to a Fund I investor whose initials are T.H.B. a purported "K1" statement for the year 2011, fraudulently purporting to reflect a capital balance when in fact there was none due to the theft.  [Count One]

On September 12, 2012, in order to secure a $1.5 million "line of credit" or loan modification to the original $6 million Bankcorp loan, which was also secured by the Elm Street property, once again the defendant falsely represented to Bancorp that his companies had earned

approximately $20 million from the sale of Facebook stock, $8.6 million of which was his profit on the transaction, when, in fact, he had made no such purchases and profit, but had been defrauded, as he well knew, of $11.2 million that he had paid to Stratos. Bankcorp was, at all times, insured by the Federal Deposit Insurance Corporation. [Count Four]

In total, the defendant misappropriated from his clients and investors, and obtained through fraud from Bankcorp, just under $20 million.

Respectfully submitted,

ZANE DAVID MEMEGER
United States Attorney


 s/ Nancy E. Potts
NANCY E. POTTS
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing was filed electronically, is available for viewing and downloading from the Electronic Case Filing system, and was served by electronic filing and first class U.S. mail upon:

>Thomas A. Bergstrom, Esq.
>Buchanan Ingersoll & Rooney, PC
>Two Liberty Place
>50 S. 16th Street, Suite 3200
>Philadelphia, PA 19102-2555

DATE: June 25, 2013                    s/ Nancy E. Potts_____
                                       Nancy E. Potts
                                       Assistant United States Attorney